*D. H. Maxwell,* for appellant.

————————◇————————

## BROWN *v.* WELCH.

TREASURY NOTES.—LEGAL TENDER.—The decision in *Thayer* v. *Hedges,* 23 Ind. 141, that the legislation of Congress making treasury notes a legal tender in the payment of debts is authorized by the constitution of the United States, approved.

SAME.—These notes, by being made a legal tender in the payment of debts, were made the equivalent of coin, as a means of payment, in all but the cases excepted ·by law.

SAME.—GOLD CONTRACT.—Under a contract stipulating for the payment of a specified sum of money in gold, or if paid in paper, the amount thereof necessary to purchase the gold at the place of payment, it is not incumbent upon the promisor, in case of his failure to pay the sum in gold, to pay a greater sum in legal tender notes.

SAME.—Even were such a contract binding, a court could not, in enforcing a remedy for non-payment, judicially foreknow that the judgment would be paid in legal tender notes, nor could evidence be produced to prove that fact.

APPEAL from the *Cass* Common Pleas.

FRAZER, J.—This was a suit upon a contract for the payment of a certain sum of money in gold, "or if paid in paper, the amount thereof necessary to purchase the gold, at the place of payment, *Logansport, Indiana.*" Judgment was rendered for the amount specified in the contract, without adding anything for the premium on gold, and the plaintiff brings the question to this court.

We have, in *Thayer* v. *Hedges,* 23 Ind. 141, held that the legislation of Congress, making treasury notes a legal

tender in the payment of debts, is authorized by the constitution of the United States; and we believe it has been uniformly so determined by the highest court of every state which has had occasion to consider the question.

The object of this legislation was to maintain the credit of the nation, and enable it to command the large amount of means which it was found necessary to expend in order to maintain the lawful authority of the general government, and secure its very existence. A part of the same financial policy was to issue public stocks, ultimately payable in gold, yielding interest also payable in gold, and to meet this recurring obligation, impost duties were required to be paid in the same medium. Thus, for one purpose, a distinction was made by law between coin and legal tender notes, and for that purpose the latter were not receivable by the government itself. It is hence argued on behalf of the appellant, with great force, that the courts may recognize a difference in value between coin and legal tender notes, and that, inasmuch as dealing in coin was not expressly prohibited, but was, for a special purpose, rendered necessary by law, a contract which, like this, fixes the measure of damages at the value of a given amount of coin is valid, and must be enforced according to its terms.

Money is the medium for effecting exchanges, and is in some sense a measure of values; and it belongs to every independent state to declare by law what shall be deemed money, in the business transactions of its own citizens, and to regulate the value thereof, and to determine its form and denominations. Such a medium of exchange is essential to the convenience and prosperity of any civilized and commercial people. Money is in demand, not because it is more valuable than the quantity of property which it will purchase, but because it can be readily exchanged for any article which is needed. When treasury notes were made a legal tender in the payment of debts, they were made the equivalent of coin as a means of payment, in all but the cases excepted by law. This, and this only, is meant by

making them a legal tender. Thus, if not made money, they are by law, for that purpose, made its equivalent, and may be used instead of it, and for that purpose a treasury note of the denomination of one dollar will accomplish all that the gold coin of the same denomination will accomplish; for by law the latter will pay no more than one dollar of indebtedness. It is only by virtue of law that either is a legal tender, and as such, the law arbitrarily makes them exactly equal. If, then, the law makes them equivalents for the purpose of payment, a failure to pay a given sum in gold, as required by the contract, cannot possibly beget an obligation to pay a greater sum in legal tender notes, whatever premium men may voluntarily choose to give for gold, when forced to obtain it for a specific purpose, or when impelled by a spirit of speculation, or by a weak distrust of the government.

There remains another consideration, not yet alluded to, which, it seems to us, would alone control the decision of this question. The court could not know that the judgment which it was about to render would be paid in "greenbacks." No evidence could possibly be produced to prove that fact, nor could the court render a judgment specially payable in that medium. The defendant was not asking such a judgment. Nor was there any warrant for a judicial assumption that he would discharge the judgment in that way. Gold coin might be lawfully employed in its payment, for it, too, is a legal tender. The court could not judicially foreknow that "greenbacks" would not be entirely withdrawn from circulation when the judgment would be discharged. And without assuming that payment would be made in legal tender notes, there could be no reason whatever for adding to the sum agreed to be paid in gold, the premium upon it.

What we have said implies that the contract contemplates gold coin, and not that metal in any form not constituting money. If this is not so, then the stipulation to pay paper enough to buy the specified sum in gold, means nothing;

for such a sum in paper as would purchase ingots worth, say $500, would simply be that sum in paper.   There would be no premium possible.

If we are correct in saying that in making treasury notes, equally with gold coin, a legal tender, Congress has for the purpose of payment made them equivalents of each other, it follows, inevitably, that a debt which may be paid with a given number of gold dollars, may also be paid with exactly the same number of dollars in treasury notes.   And inasmuch as the parties have, by the contract under consideration, fixed the amount of the debt payable in gold, it results that the same sum in "greenbacks" will pay it.   The amount of the debt is ascertained by the contract, and is not, therefore, to be determined by other proof.

This question has been under consideration by courts of high character, in several of the states, and we believe that they have uniformly arrived at the same conclusion which we have reached, and, indeed, which seems to us inevitable.

The judgment is affirmed, with costs.

*D. D Pratt* and *D. P. Baldwin,* for appellant.

*W. Z. Stuart,* for appellee.